CASE 69—PETITION EQUITY—SEPTEMBER 30.

# Bakewell, &c., vs. Ogden, &c.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

A devise of a lot in Louisville to trustees for the benefit of the testator's three daughters, with the discretionary right in the trustees to sell the lot, *in the course of two years after testator's death,* and invest the proceeds either in good stocks or to loan it upon good security, and pay the dividends or interest to the beneficiaries; and, *at the expiration of ten years* after the death of the testator, the trustees "*shall divide the principal equally and pay the same to my three daughters, taking their receipts in full and final discharge of this trust.*" *Held—* That the trustees had no right to sell or dispose of the lot after ten years from the recording of the will. *Although* the issue was not made in the case, the court intimate that the trustees had no right to sell the lot at any time after two years had elapsed after testator's death.

JOHN W. BARR,                                    For Appellants,

CITED—

*Hill on Trustees,* 711.

25 *Wend.,* 224; *Egerton, &c., vs. Conklin.*

27 *Barb.,* 222.

DEMBITZ & JOSEPH,                                For Appellees,

CITED—

*Rev. Stat., vol.* 2, *p.* 32.

*Act of Feby.* 16, 1858.

29 *Barb. (N. Y.),* 222; *Richardson vs. Sharp.*

25 *Wendell,* 224; *Egerton's adm'r vs. Conklin.*

2 *Peire Williams,* 489; *Tollett vs. Tollett.*

2 *Munford,* 129; *Roberts' widow and heirs vs. Stanton.*

2 *Brock's C. C. R., p.* 432; *Wallis vs. Thornton.*

*Civil Code, sec.* 445.

Bakewell, &c., vs. Ogden, &c.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

An authenticated copy and probate of the last will of Eliza Berthoud, which had been admitted to record in St. Louis county, Missouri, in February, 1854, was also admitted to record by the Jefferson county court, of this State, in November, 1859.

The authority of the Bakewells to act as trustees is derived from this will; and, therefore, all the proceedings to admit it to record must be regarded as brought to the notice of Peters & Wilson, their vendees.

The controlling question, then, is, whether the trustees were really executing the trusts according to the will when they conveyed the lot in Louisville to said Peters & Wilson.

The following is so much of the will as more immediately bears on this question, and is the more important in elucidating it:

"I do hereby give the lot of ground in the city of Louisville, or the proceeds thereof, should it or any part of it be sold, to my two brothers, Thos. G. Bakewell and Wm. G. Bakewell, or the survivor thereof, in trust for the sole use of my three daughters, Mary Grimshaw, Ann Ogden, and Elizabeth Ridgeling, or the heirs of their bodies. And I do hereby direct said trustees to sell said property at such time, in the course of two years after my death, as, at their discretion, shall seem best; to invest the proceeds in good stocks or upon good security; and to pay the interest or dividends therefrom regularly, in equal portions, to my three daughters above named, taking their receipts respectively. *At the expiration of ten years after my death the trustees shall divide the principal equally, and pay the same to my three daughters, taking their receipts respectively in full and final discharge of this trust.*"

It is said by Kent in *section* 62, 4 *Com.*, 365–6, *Comstock's edition*, "But it is the plain and settled rule that the conditions annexed to the exercise of the power must be strictly complied with, however unessential they might have been if no such precise direction had been given. They are incapable of admitting any equivalent or substitution; for the person who creates the power has the undoubted right to create what checks he pleases to impose to guard against a tendency to abuse. The courts have been uniformly and severely exact upon this point."

And in the same lecture, after mentioning the various modifications of the statutes of New York made to mitigate the rigors of the common law, at page 369, he says: "If the conditions annexed to a power be merely nominal, and evince no intention of actual benefit to the party to whom or in whose favor they are to be performed, they may be wholly disregarded in the execution of the power. *In all other respects* the intention of the grantor of a power as to the mode, *time*, and conditions of its execution, must be observed, subject to the power of the court of chancery to supply defective executions."

And in note "*b*" cites *Lee's case, Cro. Eliz.*, 26; 1 *Leon.*, 286; 2 *Ibid*, 106; *Dyer*, 219, *pl.* 8, *s. p.*, in which "it was adjudged in 4 *Eliz.*, that if the testator, by will, directs that, *after the death of his son*, his executors should sell his lands by the advice of A and B, and A dieth in the life of the son, a sale afterwards by the executors would not be good, for the *assent of A* as well as of B was essential."

And in note 4 he cites *Lancashire vs. Lancashire*, 2 *Phillips*, 657, in which it was said: "Where a devise in trust for a niece gave discretionary power to the trustees, on her attaining the age of twenty-one, or marrying,

to settle the whole or a part on her and her children, with remainder absolutely to her mother, in default of children, and the niece attained twenty-one without marrying, and died before any settlement had been made under the power, it was held that the power could not then be exercised, and that her heir took the whole of the real estate."

And in *Richardson vs. Sharpe*, 29 *Barb. S. C. R.*, 225, the supreme court of New York, in determining whether the executors had power, under Simon Richardson's will, to sell at the date of the transaction, correctly said: "The limitation is direct and express that they are to sell within seven years of testator's death; and this implies that they are not to sell after that time. There is no reason why his will, in this respect should not be observed as well as in every other; for it will not be doubted that he had the power to limit and prescribe the time within which the sale should be made, as he had to limit and appoint the person or persons to make it."

The time in which a power of sale is to be made may be as important as any other restriction; at least, it is as legal for the testator to designate the time as the manner of executing the power in any other respect, and courts are as much bound to regard it as any other condition or direction.

These appellees may be estopped from denying the right and power of the trustees to sell the property after the expiration of two years, and before the entire trust ceased, by the proceedings in the Louisville chancery court to have the will construed and the power executed, which was subsequent to two years, but before ten years from the testatrix's death; but they are not so estopped to deny such power after the trust had ceased.

Bakewell, &c., vs. Ogden, &c.

The devise was of " *the lot*," or " *the proceeds thereof*," in trust for the sole use of testatrix's three daughters, with a discretionary right in the trustees of sale " *in the course of two years* " after her death, and to invest the proceeds either in good stocks or to loan it upon good security, and to pay the dividends or interest to the beneficiaries; and, " *at the expiration of ten years after my death, the trustees shall divide the principal equally and pay the same to my three daughters, taking their receipts in full and final discharge of this trust.*"

If the trustees should fail to sell as provided, in their discretion, within the time, of course the lot, being the property of the beneficiaries, was freed from the discretionary right of sale in the trustees; and if the appellees be estopped to deny this power of sale after two years and before the period when the proceeds were to be handed over to them, they are not after that time. This will clearly manifests the intention that testatrix's three daughters, if they survived ten years, should then have the absolute control; and the property not having been sold within the ten years, we see no reason why the entire trust should not then be regarded at an end, and the right to control the property as absolute as though it had been converted.

The true interpretation of the will, perhaps, would be that these beneficiaries had the right to take entire control of the lot if not sold within the two years from the testatrix's death; but however this may be, we cannot doubt that, at the expiration of ten years, they had as much right to control the lot as they would its proceeds had it been sold and these paid over as directed by the will; and, consequently, the trustees had no right to sell or in any way dispose of this lot after ten years from the recording of the will.

Bakewell, &c., vs. Ogden, &c.

Peters & Wilson cannot be regarded as innocent purchasers without notice, because, the will being the trustees' authority to sell, its provisions and conditions are notified to them as fully as the recitals of such a trust would have been in a deed of conveyance, had their powers been derived from such.

We have not considered the extraneous facts and charges of fraud, &c., sufficiently important to mention, but have devolved the case upon the question of legal power in the trustees.   If the trustees still held the naked legal title to the lot after the ten years from the testatrix's death expired, it was without right of sale or conversion, and the beneficial use was in the three daughters, and Peters & Wilson hold to their use, save as to the one who consented to the sale, so that it matters but little whether the legal title vested in the beneficiaries after the power to sell and the trust to do so had expired; for in either view of the case the judgment was right, and Peters & Wilson should release two thirds of the lot to appellees.

Hence, the judgment is affirmed.